UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUVIQ PLUMAJ,

                Petitioner,                        Case Number 11-12031
                                                   Honorable David M. Lawson

v.

RAYMOND BOOKER,

                Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Luviq Plumaj entered a guilty plea to second-degree murder and a no contest plea to manslaughter in a combined proceeding. The two homicides were not related. He was sentenced to prison terms totaling 25-½ years to 38-¼ years, which approximated the sentence promised in his plea bargain. However, his attorney gave him incorrect advice on when Plumaj would be eligible for parole. Plumaj alleges in his habeas corpus petition, filed by his current attorney, that the bad advice rendered his pleas involuntary, and his lawyer was constitutionally ineffective for giving him that information and for other deficient performance. Plumaj asks for an evidentiary hearing on his ineffective assistance of counsel claim, and he seeks release for the constitutional violations. The state has responded to the petition, arguing that Plumaj did not exhaust at least one of his claims, he is not entitled to a hearing in this Court, despite the state court's failure to conduct a hearing, and his claims lack merit. The petitioner presents a serious challenge to his second-degree murder conviction and sentence. However, at the time the state courts rejected Plumaj's arguments, there was no clearly established Supreme Court case that recognized that bad advice about parole eligibility would render a plea involuntary or provide the basis for an ineffective-assistance-of-counsel claim. To the contrary, until 2010, parole eligibility was considered a "collateral

consequence" of conviction, about which a defendant need not be informed.  That view changed

with the decision in *Padilla v. Kentucky*, 559 U.S. 356 (2010), which held that bad advice about

collateral consequences of a conviction can invalidate a guilty plea.  But *Padilla* is not retroactive.

Therefore, the Court must deny the petition.

I.

The facts of the two separate cases were summarized by the Michigan Court of Appeals as

follows:

> Circuit court number 07-005810 arises out of the January 28, 2007 death of Robert
> Brown.  A truck driven by defendant struck Brown as Brown was standing outside
> a stalled vehicle.  Defendant was charged with manslaughter and failure to stop at
> the scene of an accident when at fault.  Circuit court number 07-009020 arises out
> of the February 21, 2007 shooting death of Timothy Porter and assault of Kenneth
> Hart. The prosecutor alleged that the shooting death of Porter was done with the
> assistance, and at the direction, of defendant.   Defendant was charged with
> first-degree murder, two counts of assault with intent to murder, and felony firearm.

*People v. Plumaj,* 284 Mich. App. 645, 646-47; 773 N.W. 2d 763 (2009).

Plumaj was represented in both cases by attorney Anthony Chambers.  The cases were

consolidated, and at an August 27, 2007 hearing in the Wayne County, Michigan circuit court, the

parties outlined a plea agreement on the record, and Plumaj entered his guilty and no contest pleas.

The record of proceedings that day reflects the following:

> THE COURT: Did the People agree to reduce Count 1, First Degree Premeditated
> Murder to Murder in the Second Degree, and all the remaining counts will be
> dismissed?
> MS. KETTLER: That's correct, your Honor.
> THE COURT: And that the sentence agreement is 25 and a half to 35, M.D.O.C.,
> restitution on all counts.
>       And on the other case, Manslaughter and Failure to Report the Scene of an
> Accident, Death Resulting, there's a plea of no contest and 10 to 15 years M.D.O.C.,
> to run concurrent with the sentence in 07-9020.
>       Is that the agreement?
> MS. KETTLER: Plus restitution; yes.

-2-

THE COURT: Plus restitution.

MS. KETTLER: Yes, Your Honor.

THE COURT: Now, Mr. Chambers, your client wishes to plead guilty to Murder in the Second Degree?

MR. CHAMBERS: That's correct, Your Honor.

THE COURT: Okay. Now, Mr. Plumaj, the People are reducing the Murder in the First Degree, Premeditated, which carries a mandatory, non-probation-able, non-parole-able life sentence, with no chance of parole. They're going to reduce that to Second Degree Murder.

In exchange for a plea of guilty, there's a sentence of 25 and a half to 35 years on that, Michigan Department of Corrections. And the people are going to dismiss the second count, and the third count; AWIM, which carries up to life, and Felony Firearm, which is a two year, mandatory consecutive sentence.

Now, on the other case, where you're charged with Manslaughter, I understand it will be a sentence agreement of 10 to 15, which will run concurrent with the sentence of the 25 and a half to 35. And restitution on all counts.

Do you wish to accept that offer and plead guilty to Murder in the Second Degree?

DEFENDANT PLUMAJ: Yes, Your Honor.

THE COURT: Okay. Now are you on probation or parole to anyone at this time?

DEFENDANT PLUMAJ: No.

THE COURT: Then are you offering this plea freely and voluntarily?

DEFENDANT PLUMAJ: Yes.

THE COURT: Are there any threats that you wish to bring to the Court's attention?

DEFENDANT PLUMAJ: No, Your Honor.

THE COURT: Are there any other promises you wish to bring to the Court's attention?

DEFENDANT PLUMAJ: No, Your Honor.

THE COURT: All right. Now, by pleading guilty you waive your rights to have a trial by jury. We have a jury right outside.

You also waive your right to have a trial by the Court, without a jury.

In any case you are presumed innocent. The People have to prove that you are guilty, beyond a reasonable doubt.

You waive your right to confront and question the witnesses against you.

You also waive your right to have the Court to compel witnesses to come to court and testify for you.

You have a right to testify at your trial.

You have a right to remain silent. And if you exercise your right to remain silent, your silence cannot be used as evidence against you.

You waive any right to claim later on that this plea is a result of any promises or threats that are not brought to the Court at this time.

And you waive your right to claim that this plea was not — pleading guilty was not your choice.

And you waive your appeal rights.

Do you understand all of your rights?

DEFENDANT PLUMAJ: Yes, Your Honor.

THE COURT: Now, on the other case, the Manslaughter, if the Court accepts a plea of no contest, the result will be the same as a plea of guilty.

Now, do you wish to offer a plea of no contest to that?

DEFENDANT PLUMAJ: Correct.

THE COURT: All right. Now, the rights that I just gave you are the same. Do you need me to repeat them again?

DEFENDANT PLUMAJ: No, Your Honor.

THE COURT: Okay. Now on the 21st of February, 2007, were you at 19149 Gable, in the City of Detroit?

DEFENDANT PLUMAJ: Yes.

THE COURT: And did you, in connection with another person, kill Timothy Porter?

DEFENDANT PLUMAJ: Yes.

THE COURT: Okay.

Now, Ms. Kettler, on the other case of no contest, we have to have some statements of the offense.

MS. KETTLER: Yes, Your Honor. People and the Defense will stipulate to the content of the entire Investigator's Report.

However, it will state, in summary, that at Mound and Nevada, in the City of Detroit, on January 28, 2007, the defendant was traveling north on Mound at a speed greater than safe for the road conditions, which were ice and snow covered.

When he approached a disabled motor vehicle, and struck it, killing Mr. Robert Brown, a 66-year-old man. And also that Mr. Plumaj then pled on foot from the scene of the collision.

THE COURT: Do you accept those facts, Mr. Chambers?

MR. CHAMBERS: Yes, Your Honor.

THE COURT: Okay. The Court will accept the plea of guilty to Murder in the Second Degree.

The Court will accept the plea of no contest to Manslaughter. And as I said, Mr. Plumaj, the result will be the same. So, the Court will enter a plea of guilty to Manslaughter, and Failure to Stop at the Scene of an Accident, with a Death Resulting.

Both matters will then be referred to the Department of Corrections Probation Department for a Presentence Report.

Oh, I'm sorry, are you satisfied with the plea?

MS. KETTLER: If I could, at the suggestion of my supervisor, can I just ask two questions —

THE COURT: Oh, sure.

MS. KETTLER:  — regarding the Second Degree Murder case?

THE COURT: Okay.

MS. KETTLER: Mr. Plumaj, did you give the gun that was used to kill Mr. Porter to Shannon Bommarito?

DEFENDANT PLUMAJ: Yes.

-4-

MS. KETTLER: And did you tell her to kill Mr. Porter with it?
DEFENDANT PLUMAJ: Yes.
MS. KETTLER: I'm satisfied.
THE COURT: Okay.
    Are you satisfied, Mr. Chambers?
MR. CHAMBERS: Yes.
THE COURT: The pleas will be accepted.

Plea Hr'g Tr., Aug. 27, 2007, at 3-8.

The court held a sentencing hearing on September 13, 2007. The parties identified a problem with the promised sentence in the second-degree murder case, based on a perceived limitation under state law that the minimum sentence could not exceed two-thirds of the maximum sentence. The record of the proceedings reflects the following discussion:

MR. CHAMBERS: Your Honor, we are prepared to go forward at this state with the Sentencing.
    We have amended the settlement offer in this case, both myself and Mr. Plumaj have signed off on that. The only change is the top end, which is changed from 35 to 38 and three, I believe it is.
THE COURT: Would you say that again?
MR. CHAMBERS: The only change is, instead of 25 and a half to 35, the amendment reads 25 and a half to 38 years, and three months.
THE COURT: Okay. What's the change?
MS. KETTLER: That's just the changes to the tail, adding it on so that it doesn't violate *Tanner.*
THE COURT: Yeah, I understand about the arithmetic. Okay.
MS. KETTLER: Oh, okay.
THE COURT: Okay.
MS. KETTLER: That's the only change.
THE COURT: You accept that, then?
MR. CHAMBERS: That's correct.
    Mr. Plumaj does as well; is that correct, Mr. Plumaj?
DEFENDANT PLUMAJ: Correct.
THE COURT: Okay. Mr. Chambers, you may proceed, if there is anything else to wish to say?
MR. CHAMBERS: Just something we would like to say, acknowledge we've received the Presentence in this case. Myself and Mr. Plumaj have reviewed the report. We find it to be true and accurate in its content, including the credit for days, which is reflected in the report.

>       Other than that, I don't have a lot to say; there is an agreement in this case,
> and I just ask the Court to follow it.

Sentence Hr'g Tr., Sept. 13, 2007, at 3-8. The court then sentenced the petitioner to prison for 25-½ years to 38-¼ years for second-degree murder and 10 to 15 years for manslaughter and failure to stop, with the sentences to run concurrently.

Thereafter, the petitioner obtained new counsel and filed a motion to withdraw his guilty and no contest pleas. He alleged that he received bad advice from Mr. Chambers on the parole consequences of his sentence, and that Chambers failed to file a motion to challenge the magistrate judge's probable cause determination at the preliminary examination. He also alleged that the plea hearing was defective because the judge did not place him under oath, as required by state law. He asked for an evidentiary hearing on his claim of ineffective assistance of counsel. And he filed an affidavit in support of his motion, in which he averred the following:

1.  That he is the defendant in the above captioned case.
2.  That he was represented by Attorney Anthony Chambers in this case.
3.  That on the morning of August 27, 2007, he, Mr. Plumaj, was fully prepared to go to trial.
4.  On that date, trial counsel brought him a plea bargain which he rejected because he is innocent of the charges.
5.  Trial counsel then brought a second offer with a sentence of 25 ½ years to 35 years in prison.
6.  At this point, Luviq Plumaj felt that his attorney was abandoning him so he asked him how much time he would have to do on a 25 ½ year sentence.
7.  Mr. Chambers told him that he would be eligible for parole at the low end of the guidelines and would probably get an early release date.
8.  Mr. Chambers further told him that the low end of the guidelines was 180 months.
9.  Based on that representation alone, that his parole was based on the low end of the guidelines and that he would get an early release, he agreed to plead guilty in both cases.
10. Further defendant informed counsel before sentencing that he wished to withdraw the plea, but counsel told him that the judge had made up his mind.
11. That he is also innocent of the charges in case #07-5810.

Luvig Plumaj Aff., dkt. 1-15.

The judge who presided at the plea and sentence hearings had retired; a successor heard argument on the motion to withdraw the plea. That judge did not conduct an evidentiary hearing. Instead, the judge determined that the failure to place the petitioner under oath at the original plea hearing was a fatal defect and set aside the pleas. The prosecutor applied for leave to appeal, which was granted. The court of appeals held that the defect in the plea proceeding did not require automatic vacation of the pleas, and the court remanded the case for a determination of the other issues in the petitioner's motion, particularly whether his pleas were made knowingly, understandingly, voluntarily, and accurately. *People v. Plumaj,* 284 Mich. App. 645, 651-52, 773 N.W. 2d 763, 767 (2009).

On remand, the trial court declined to conduct an evidentiary hearing on the ineffective assistance of counsel claim. After hearing additional argument, the court held:

> I find as a matter of law there was substantial compliance with the requirements. I find that the plea is full, fair, voluntary and knowingly made and that the plea was in all respects accurate. I note that the plea to voluntary manslaughter was a nolo contendere plea, but a factual basis was made out as to murder in the second degree.
> I believe a reviewing court should have a very dim view of what a Defendant says his lawyer promised him, but I agree with the prosecution that even his own recitation of what the lawyer promised was less than persuasive in terms of the outcome of this case; that the Defendant did derive an enormous benefit from the plea agreement to the second degree murder along with the sentence agreement.
> So I find that the motion before me results in a finding that the plea was full, fair, voluntary, knowingly made and accurate in all respects.

Hr'g. Tr. at 26-27 (June 12, 2009).

The petitioner sought leave to appeal this ruling, and the appellate courts denied leave to appeal in a standard order that did not discuss the merits. *People v. Plumaj,* No. 293008 (Mich. Ct.

-7-

App. Aug. 28, 2009), *lv. den.* 486 Mich. 996, 783 N.W.2d 109 (2010) (Kelly, Cavanagh, and

Hathaway, JJ, would grant leave to appeal).

The petitioner filed a timely petition in this Court for a writ of habeas corpus, in which he

raised the following issues:

> I.      PETITIONER PLUMAJ IS ENTITLED TO AN EVIDENTIARY HEARING
>         ON HIS CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> II.     PETITIONER PLUMAJ WAS DEPRIVED OF DUE PROCESS OF LAW
>         BECAUSE HIS GUILTY PLEAS WERE NOT VOLUNTARILY,
>         INTELLIGENTLY AND KNOWINGLY MADE DUE TO INEFFECTIVE
>         ASSISTANCE OF COUNSEL WHO (1) GAVE ERRONEOUS ADVICE
>         CONCERNING WHEN PETITIONER WOULD BE RELEASED UNDER
>         THE SENTENCE AGREEMENT, (2) FAILED TO FILE AND ARGUE A
>         MERITORIOUS MOTION CHALLENGING THE BINDOVER AT THE
>         PRELIMINARY EXAMINATION, AND (3) AGREED TO A LONGER
>         MAXIMUM SENTENCE THAN THE SENTENCE AGREEMENT UPON
>         DISCOVERY THAT THE SENTENCE AGREEMENT VIOLATED THE
>         LAW.
>
> III.    PETITIONER'S PLEAS WERE NOT UNDERSTOOD OR VOLUNTARY
>         BECAUSE THE STATE TRIAL JUDGE FAILED TO IDENTIFY THE
>         CRIME AND MAXIMUM PENALTY FOR FAILING TO STOP AT THE
>         SCENE OF AN ACCIDENT, WHAT THE PLEA AGREEMENT WAS FOR
>         THAT CHARGE, WHY A NO CONTEST PLEA WAS APPROPRIATE,
>         AND FAILED TO PLACE PETITIONER UNDER OATH AT THE PLEA
>         TAKING PROCEEDINGS.

Pet. at 6. The warden filed a response arguing that claims one and two lack merit, and claim three

is unexhausted because the petitioner did not raise it in state court as a federal constitutional

violation, instead relying only on state law.

II.

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.

L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case, "circumscribe[d]" the

standard of review federal courts must apply when considering an application for a writ of habeas

corpus raising constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003). Because Plumaj's petition was filed after the AEDPA's effective date, its standard of review applies. Under that statute, if a claim was adjudicated on the merits in state court, a federal court may grant relief only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or if the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2). "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the *dicta*, of [the Supreme] Court's decisions." *White v. Woodall*, --- U.S. ---, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks and citations omitted). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, --- U.S. ---, 131 S. Ct. 770, 786-87 (2011).

The distinction between mere error and an objectively unreasonable application of Supreme Court precedent creates a substantially higher threshold for obtaining relief than *de novo* review. The AEDPA thus imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be "given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (finding that the state court's rapid declaration of a mistrial on grounds of jury deadlock was not unreasonable even where "the jury only deliberated for four hours, its notes were arguably ambiguous, the trial judge's initial question to the foreperson was imprecise, and the judge neither

asked for elaboration of the foreperson's answers nor took any other measures to confirm the foreperson's prediction that a unanimous verdict would not be reached" (internal quotation marks and citations omitted)); *see also Dewald v. Wriggelsworth*, 748 F.3d 295, 298-99 (6th Cir. 2014); *Bray v. Andrews*, 640 F.3d 731, 737-39 (6th Cir. 2011); *Phillips v. Bradshaw*, 607 F.3d 199, 205 (6th Cir. 2010); *Murphy v. Ohio*, 551 F.3d 485, 493-94 (6th Cir. 2009); *Eady v. Morgan*, 515 F.3d 587, 594-95 (6th Cir. 2008); *Davis v. Coyle*, 475 F.3d 761, 766-67 (6th Cir. 2007); *Rockwell v. Yukins*, 341 F.3d 507, 511 (6th Cir. 2003) (en banc).

## A.

The petitioner insists that he is entitled to an evidentiary hearing in this Court on his ineffective assistance of counsel claim. He requested an evidentiary hearing in state court on at least three occasions: when he filed his motion to withdraw the pleas, again after the court of appeals remanded the case for further proceedings on the motion, and in his application for leave to appeal after the trial court ultimately denied his motion. He notes that the restriction against an evidentiary hearing in 28 U.S.C. § 2254(e)(2) applies only "[i]f the *applicant* has failed to develop the factual basis of a claim in State court proceedings" (emphasis added); and he argues that it was the state courts, not he, that prevented development of the record.

The petitioner may be correct in that assessment, but it does not matter, because the Supreme Court's decision in *Cullen v. Pinholster*, --- U.S.---, 131 S. Ct. 1388 (2011), prohibits this Court from considering new evidence in this case. The Supreme Court held that "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id.* at 1398. It reasoned that the language of the statute is "backward-looking" and "requires an examination of the state-court decision at the time it was made. It follows that the

-10-

record under review is limited to the record in existence at that same time, *i.e.*, the record before the state court." *Ibid.* Therefore, this Court must "turn a blind eye to new evidence in deciding whether a petitioner has satisfied § 2254(d)(1)'s threshold obstacle to federal habeas relief." *Id.* at 1413 (Sotomayor, J., dissenting).

The record in state court consists of the plea and sentencing transcripts, the transcripts of the arguments on the petitioner's motion, the motion papers he filed and the State's response, and the appeal papers. With the petitioner's motion, he filed the affidavit quoted above. His second attorney also filed an affidavit in which she stated that she spoke with Anthony Chambers, who confirmed that he gave the petitioner the incorrect advice about his parole consequences. The State did not bother to obtain an affidavit directly from Mr. Chambers (as is common practice in such post-conviction motions), and the petitioner's version remains unrebutted. That is the record upon which the state courts denied the petitioner relief. But Plumaj's ineffective assistance claim was brought under section 2254(d)(1) in this Court, and it was adjudicated on the merits by the state courts. *Pinholster* therefore applies. Consequently, the Court must deny the request for an evidentiary hearing.

## B.

The next question addresses the consequences of Mr. Chambers's wrong advice about the petitioner's likely parole eligibility. According to the state court record, Chambers told the petitioner that he would become eligible for parole "at the low end of the guidelines," and that "the low end of the guidelines was 180 months." However, the petitioner could not become eligible for parole under state law until he served his minimum sentence, regardless of the sentencing guidelines. Mich. Comp. Laws §§ 791.233(b), 791.233b(n) (stating that a person is not eligible for parole "until

the person has served the minimum term imposed by the court" when convicted of second-degree murder"); Mich. Comp. Laws § 791.234(1) (stating that a prisoner confined in a state correctional facility is subject to the jurisdiction of the parole board when the person has served the minimum sentence imposed by the court). It is only when a person is sentenced to a parolable life term that he is subject to the jurisdiction of the parole board after serving 180 months. Mich. Comp. Laws § 791.234(7)(a). Plumaj says that this incorrect information caused a violation of his rights under the Due Process Clause, because his guilty plea was involuntary when based on bad information; and his right under the Sixth Amendment, because he did not receive the assistance of competent counsel.

## 1.

The two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), governs the Court's analysis of ineffective assistance of counsel claims. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). To establish a claim of ineffective assistance of counsel, a defendant must show both deficient performance and prejudice. *Premo v. Moore*, --- U.S. ---, ---, 131 S. Ct. 733, 739 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Because of the high deference accorded state court determinations by AEDPA, establishing that counsel was ineffective and, therefore, the petitioner was denied his right to counsel under the Sixth Amendment is difficult. The Supreme Court recently explained:

> "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) . . . . The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S. at 690.
>
> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," *id.*, at 689; *Lindh v. Murphy*, 521 U.S. 320, 333, n.7

(1997), and when the two apply in tandem, review is "doubly" so, *Knowles*, 556 U.S. at 123. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. *Ibid*. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Richter*, 131 S. Ct. at 788.

On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Moreover, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Ibid*. (citing *Alvarado*, 541 U.S. at 664).

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty or no contest plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The first prong of the test remains the same. *Ibid*. However, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id*. at 59. The defendant must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded [no contest] and would have insisted on going to trial." *Ibid.*; *see also Smith v. United States*, 348 F.3d 545, 551-52 (6th Cir. 2003).

The state court did not spend much time on the ineffective assistance component of the petitioner's motion to withdraw his pleas. In ruling from the bench, the judge suggested that perhaps an appellate court might not believe the petitioner's version of his conversation with Mr. Chambers, and in any event, the petitioner "did derive an enormous benefit from the plea agreement to the

-13-

second degree murder along with the sentence agreement." Tr., June 12, 2009, at 26. A fair and generous reading of that ruling is that the petitioner satisfied neither the defective performance nor prejudice components of the *Strickland* test.

But although the state court might disregard the petitioner's version of his conversation about parole consequences, his second lawyer's rendition of Chambers's own recollection supports that version, and, as noted above, it is unrebutted. For the purpose of this review, the state court record must be read as establishing that Chambers told Plumaj that under the sentence agreement, he would be eligible for parole in 15 years, which was not true. Under any rational view, that conduct must constitute deficient performance. The petitioner asked for legal information, which apparently was important to his decision-making process, and his lawyer misinformed him. Who could not say that such performance "fell below an objective standard of reasonableness?" *Strickland*, 466 U.S. at 688. But did that defective performance violate the Sixth Amendment in a guilty plea context?

The Supreme Court has not decided whether erroneous advice to a guilty-pleading defendant about parole eligibility amounts to deficient performance. To the contrary, the Court expressly declined to decide that issue in *Hill v. Lockhart* 474 U.S. 52 (1985), stating:

> We find it unnecessary to determine whether there may be circumstances under which erroneous advice by counsel as to parole eligibility may be deemed constitutionally ineffective assistance of counsel, because in the present case we conclude that petitioner's allegations are insufficient to satisfy the *Strickland v. Washington* requirement of "prejudice."

*Id.* at 60.

After *Lockhart*, the Sixth Circuit has followed the Supreme Court's lead and successfully dodged the first-prong issue when it came up. The cases all were resolved on the prejudice prong. For example, in *Wright v. Lafler*, 247 F. App'x 701, 707-09 (6th Cir. 2007), the court stated:

-14-

> Wright also asserts that his guilty plea was involuntary because his attorney gave him incorrect advice about his parole eligibility.
>
> . . .
>
> Wright has failed to demonstrate a reasonable probability that, but for his counsel's purportedly flawed advice, he would not have pled guilty.
>
> . . .
>
> Wright's counsel made a good faith effort to inform Wright of his potential sentence, and Wright's counsel testified that Wright expressed his intent to plead guilty before there was any discussion of his guidelines range or possible sentence.

*Id.* at 707-09 (footnote omitted).

However, in at least one case, from 2004, the Sixth Circuit conceded that incorrect advice on parole eligibility might amount to conduct falling below the standard of professional reasonableness:

> Considerable case law supports a determination that giving erroneous advice about parole may constitute deficient performance. Affirmative misstatements about parole possibilities are more objectively unreasonable than failure to inform the defendant about the parole possibilities. *James*[ *v. Cain*], 56 F.3d [662,] 667 [(5th Cir. 1995)] (noting that "this Court and others have recognized that affirmatively erroneous advice of counsel as to parole procedure is much more objectively unreasonable than would be a failure to inform of parole consequences"). When defense counsel grossly misinforms a defendant about details of parole and the defendant relies on that misinformation, the defendant may have been deprived of his constitutional right to counsel. *See Strader v. Garrison*, 611 F.2d 61, 65 (4th Cir.1979). In *Meyers v. Gillis*, 142 F.3d 664 (3d Cir.1998), a habeas petitioner argued that his counsel was ineffective for giving him incorrect advice about parole eligibility. The Third Circuit granted habeas relief, stating that "Meyers did not realize he was, in all reality, pleading guilty to an offense that did not allow him to receive parole in the future." *Id.* The court noted that, while a defendant does not have a constitutional right to be provided with parole eligibility information prior to entering a plea, any information that is provided by defense counsel must be accurate. *Id.* at 667 n.2.

> McAdoo argues that Batchelor was ineffective because he allegedly gave McAdoo incorrect information regarding the terms of the plea agreement. He claims that Batchelor told him that he would serve at most twenty years in prison. Assuming McAdoo's claim to be true, his argument that his counsel's performance was deficient may have merit.
>
> . . .
>
> McAdoo's ineffective assistance claim fails in any event, however, because McAdoo cannot establish prejudice. The prejudice prong of *Strickland* requires McAdoo to

-15-

> show that there is a reasonable probability that, but for counsel's errors, he would not
> have pleaded guilty and would have gone to trial.

*McAdoo v. Elo*, 365 F.3d 487, 499 (6th Cir. 2004)

The petitioner has not cited a Sixth Circuit or Supreme Court case that directly confronts the issue whether misinformation about parole eligibility was professionally unreasonable, and this Court has not located one. In fact, as discussed below, many courts have held that "eligibility for parole is not a pertinent consequence of a plea of which a defendant must be informed." *Franks v. Lindamood*, 401 F. App'x 1, 7 (6th Cir. 2010). The reasoning is that, unlike the sentence itself, parole eligibility is a "collateral," not a direct, consequence of a guilty plea. *See Armstrong v. Egeler*, 563 F.2d 796, 800 (6th Cir. 1977).

The Supreme Court likewise appears to consider advice about parole as being advice relating to "collateral consequences." But after *Padilla v. Kentucky*, 559 U.S. 356 (2010), bad advice on "collateral" consequences plainly can amount to ineffective assistance.

In *Chaidez v. United States*, --- U.S. ---,133 S. Ct. 1103, 1108-09 (2013), the Court recited the history of the cases leading up to *Padilla*, and when it discussed *Lockhart* it referred to advice about parole as being in the same class with advice about deportation:

> The relevant background begins with our decision in *Hill v. Lockhart*, 474 U.S. 52, (1985), which explicitly left open whether advice concerning a collateral consequence must satisfy Sixth Amendment requirements. *Hill* pleaded guilty to first-degree murder after his attorney misinformed him about his parole eligibility. In addressing his claim of ineffective assistance, we first held that the *Strickland* standard extends generally to the plea process. *See Hill*, 474 U.S. at 57. We then determined, however, that *Hill* had failed to allege prejudice from the lawyer's error and so could not prevail under that standard. *See id.* at 60. That conclusion allowed us to avoid another, more categorical question: whether advice about parole (however inadequate and prejudicial) could possibly violate the Sixth Amendment. The Court of Appeals, we noted, had held "that parole eligibility is a collateral rather than a direct consequence of a guilty plea, of which a defendant need not be informed." *Id.* at 55. But our ruling on prejudice made "it unnecessary to determine

-16-

whether there may be circumstances under which" advice about a matter deemed collateral violates the Sixth Amendment. *Id.* at 60.

That non-decision left the state and lower federal courts to deal with the issue; and they almost unanimously concluded that the Sixth Amendment does not require attorneys to inform their clients of a conviction's collateral consequences, including deportation. All 10 federal appellate courts to consider the question decided, in the words of one, that "counsel's failure to inform a defendant of the collateral consequences of a guilty plea is never" a violation of the Sixth Amendment. *Santos-Sanchez v. United States*, 548 F.3d 327, 334 (5th Cir. 2008).

*Chaidez*, 133 S. Ct. at 1108-09 (citing, *inter alia*, *Ogunbase v. United States*, 924 F.2d 1059 (6th Cir. 1991)).

Under *Padilla*, then, an argument could be made that affirmative mis-advice about parole eligibility might provide the basis for a successful Sixth Amendment challenge to a guilty-plea-based conviction. However, *Chaidez* also held that *Padilla* was not retroactive to convictions that were final when it was decided. *Chaidez*, 133 S. Ct. at 1113 (recognizing that the Supreme Court "announced a new rule in *Padilla*. Under *Teague*[ *v. Lane*, 489 U.S. 288 (1989)], defendants whose convictions became final prior to *Padilla* therefore cannot benefit from its holding").

The Supreme Court has emphasized that the law that state courts must follow is clearly established Supreme Court law as it existed "at the time of the state-court adjudication on the merits." *Greene v. Fisher*, --- U.S. ---, ---, 132 S. Ct. 38, 43 (2011); *see also Miller v. Stovall*, 742 F.3d 642, 644-45 (6th Cir. 2014). There was no clearly established Supreme Court case law that held that mis-advice about parole consequences amounted to deficient performance under *Strickland*.

The petitioner's other allegations of deficient performance do not pass the test, either. He contends that Mr. Chambers misstepped at sentencing when he agreed to an increase in the

-17-

maximum sentence for the second-degree murder conviction from 35 years to 38-¼ years.  Under Michigan's indeterminate sentencing scheme, the minimum prison sentence may not exceed two-thirds of the statutory maximum sentence.  *See People v. Tanner,* 387 Mich. 683, 690; 199 N.W. 2d 202, 204-05 (1972); Mich. Comp. Laws § 769.34(2)(b).  The maximum penalty for second-degree murder is life with the possibility of parole.  At sentencing, the parties and the court apparently were under the belief that the *Tanner* rule applied to a term-of-years sentence.  And there has been confusion on that point.  *Compare People v. Floyd*, 481 Mich. 938, 939, 751 N.W.2d 34 (2008) (holding that the two-thirds rule applied to a term-of-years sentence), *with People v. Floyd (Floyd II)*, 490 Mich. 901, 804 N.W.2d 564 (2011) (holding that "[t]he decision in *Tanner* does not apply to sentences where the statutory maximum is 'life or any term of years'").  In any event, in his post-conviction motion, the petitioner was critical of Mr. Chambers's agreement to the sentence modification, asserting that the proper two-thirds formula could have been achieved by lowering the minimum sentence rather than raising the maximum.  That is true.  However, at the sentence hearing, the petitioner himself expressly agreed to the modification.  Therefore, he has waived any claim that his lawyer's performance was deficient.

The petitioner also criticizes Mr. Chambers's pretrial conduct, alleging that he should have filed a motion challenging the magistrate's probable cause determination.  But the petitioner's guilty and no contest pleas waived those alleged constitutional violations.  *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973) (holding that an unconditional guilty plea constitutes a waiver of all pre-plea non-jurisdictional constitutional deprivations); *United States v. Freed*, 688 F.2d 24, 25 (6th Cir. 1982) (holding the same for a no contest plea).  Pre-plea claims of ineffective assistance of trial counsel are considered non-jurisdictional defects that are waived by a guilty or nolo contendere plea.

-18-

*United States v. Stiger*, 20 F. App'x 307, 309 (6th Cir. 2001) (citing *United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (holding that pre-plea ineffective assistance of counsel claims are waived)).

Moreover, the state court found that the petitioner "derived a substantial benefit" from the plea bargain, in which he avoided a mandatory life sentence without parole. It is reasonable to infer from that finding that the state court rejected the petitioner's assertion that there was "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lockhart*, 474 U.S. at 58; *see also Pilla v. United States*, 668 F. 3d 368, 373 (6th Cir. 2012) (noting that "'to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'"(quoting *Padilla*, 559 U.S. at 372)). That finding of no prejudice is not unreasonable in itself. For this Court to overturn it, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 791-92 (citations omitted). Because of the great deference accorded state court findings, this Court cannot reach that conclusion.

For these reasons, the Court must conclude that the state court did not mis-apply either prong of the *Strickland* test. The petitioner is not entitled to relief on his ineffective assistance of counsel claim.

## 2.

For many of the same reasons, the petitioner's due process claim fails. The Sixth Circuit held (pre-*Padilla*) that erroneous advice regarding parole eligibility did not render a guilty plea involuntary, because the petitioner was not entitled to advice regarding collateral consequences such as parole. *Brown v. Perini*, 718 F.2d 784, 788-89 (6th Cir. 1983). The court explained:

> Ultimately, the case rests upon whether the petitioner was aware of all the direct consequences of his guilty plea. He certainly understood that the mandatory

sentence for aggravated murder was life imprisonment. However, he claims that his plea is vitiated by the misinformation regarding parole. We must reject this claim.

This Circuit has expressly declined to consider parole eligibility a direct consequence of a guilty plea. *Armstrong v. Egeler*, 563 F.2d 796 (6th Cir. 1977). In *Armstrong*, this Court considered a state prisoner's claim that his constitutional right to due process had been violated when the trial judge failed to inform him that one of the consequences of his plea to an offense requiring a sentence of life imprisonment was parole ineligibility. . . . Several other circuits have held that due process does not require that a defendant be advised regarding parole consequences. *See, e.g., United States v. Garcia*, 636 F.2d 122, 123 (5th Cir. 1981) (per curiam); *Hunter v. Fogg*, 616 F.2d 55, 61 (2d Cir.1980); *Strader v. Garrison*, 611 F.2d 61, 63 (4th Cir. 1979). These circuits appear to agree that parole is not a direct consequence within the meaning of *Brady*[ *v. United States*, 397 U.S. 742 (1970)].

We are, therefore, constrained by this Court's pronouncement in *Armstrong*. In light of the peculiar facts in this case, misinformation concerning the collateral consequences of the petitioner's guilty pleas does not constitute a violation of due process and therefore does not void his guilty plea.

*Brown*, 718 F.2d at 788-89; *see also Franks v. Lindamood*, 401 F. App'x 1, 7 (6th Cir. 2010) (reiterating that "this circuit has held that eligibility for parole is not a pertinent consequence of a plea of which a defendant must be informed").

There was no clearly established Supreme Court case at the time of the state court's decision that held that erroneous advice about parole consequences of the conviction could render a guilty plea involuntary. Moreover, at the plea hearing, the following colloquy negated the petitioner's present claim:

> THE COURT: Are there any other promises you wish to bring to the Court's attention?
> DEFENDANT PLUMAJ: No, Your Honor.
> THE COURT: All right. Now, by pleading guilty you waive your rights to have a trial by jury. We have a jury right outside.
> . . .
>         You waive any right to claim later on that this plea is a result of any promises or threats that are not brought to the Court at this time.

-20-

Plea Hr'g Tr., Aug. 27, 2007, at 5.  The petitioner's "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  The state court, therefore, did not unreasonably conclude that the petitioner's guilty and no contest pleas were not involuntary.

C.

Lastly, the petitioner attacks his conviction for leaving the scene of an accident based on a variety of defects in the plea-taking procedure: failure to identify the crime and its maximum penalty, its role in the overall plea agreement, failure to give an explanation why a no contest plea was appropriate, and the failure to place the petitioner under oath.  All of these challenges address Michigan's plea-taking procedures and are governed by state law.  The Michigan Court of Appeals rejected the oath issue, and found that the failure to place the petitioner under oath did not render the pleas involuntary.  *People v. Plumaj*, 284 Mich. App. at 651-52, 773 N.W. 2d at 767.  That finding reasonably applied federal constitutional law.  The only question on collateral review of a guilty plea is whether the plea was counseled and voluntary.  *United States v. Broce*, 488 U.S. 563, 569 (1989).  "A plea of guilty is constitutionally valid only to the extent it is 'voluntary' and 'intelligent.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)).  A guilty plea is voluntary if the accused understands the nature of the charges against him and the constitutional protections that he is waiving.  *Henderson v. Morgan*, 426 U.S. 637, 645, n. 13 (1976).  A plea is knowing and intelligent if it is done "with sufficient awareness of the relevant circumstances and likely consequences." *Brady*, 397 U.S. at 748.  The leaving-the-scene charge was part of the manslaughter case, and as part of the plea bargain, the

-21-

sentence for that crime was absorbed into the ten-to-fifteen-year concurrent sentence for manslaughter. That was explained at the outset of the plea hearing.

As for the remaining challenges, "'federal habeas corpus review does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The petitioner's argument that the trial judge violated the provisions of the Michigan court rule (Mich. Ct. R. 6.302) is not an error for which a federal court would issue a writ of habeas corpus. *See Watkins v. Lafler*, 517 F. App'x 488, 500 (6th Cir. 2013).

III.

For the reasons stated, the Court concludes that the state court did not contravene or unreasonably apply federal law as determined by the Supreme Court. Therefore, the petitioner has not established that he is presently in custody in violation of the Constitution of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson_____
DAVID M. LAWSON
United States District Judge

Dated: July 21, 2014

-22-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 21, 2014.

s/Shawntel Jackson
SHAWNTEL JACKSON